**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CHRISTOPHER J.
DIBENEDETTO,**

                             **Plaintiff,**                  5:12-cv-1528
                                                                         (GLS)

                v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                             **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Olinsky Law Group | HOWARD D. OLINSKY, ESQ. |
| 300 S. State Street | |
| Suite 420 | |
| Syracuse, NY 13202 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | ANDREEA L. LECHLEITNER |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe**

**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Christopher J. DiBenedetto challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering DiBenedetto's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### II. Background

On May 28, 2009, DiBenedetto filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since December 2, 2007. (Tr.[1] at 83-84, 189-98.) After his applications were denied, (*id.* at 85-92), DiBenedetto requested a hearing before an Administrative Law Judge (ALJ), which was held on October 19, 2010, (*id.* at 62-82, 99-101). On January 25, 2011, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 6-11, 24-42.)

DiBenedetto commenced the present action by filing his complaint on October 9, 2012 wherein he sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 11, 12.)

### III. <u>Contentions</u>

DiBenedetto contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 11 at 10-17.) Specifically, DiBenedetto claims that the ALJ erred in: (1) determining that a substance use disorder was material to the finding of disability ; (2) rendering his residual functional capacity (RFC) determination; (3) evaluating DiBenedetto's credibility; and (4) making his step five determination. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 12 at 8-17.)

### IV. <u>Facts</u>

The court adopts the parties' undisputed factual recitations. (Dkt.

3

No. 11 at 2-8; Dkt. No. 12 at 1-2.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Materiality Of Substance Use

First, DiBenedetto argues that the ALJ's conclusion that his substance use disorder was material to the finding of disability is not supported by substantial evidence. (Dkt. No. 11 at 10-12.) The court disagrees.

The Act, as amended in 1996, states that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be

---

[2] Review under 42 U.S.C. §§ 405(g) and 1383(c)(3) is identical. As such, parallel citations to the regulations governing SSI are omitted.

4

a contributing factor material to the Commissioner's determination that the individual is disabled." *Mims v. Apfel*, 182 F.3d 900, 1999 WL 376840, at *1 (2d Cir. 1999) (internal quotation marks and citation omitted). Accordingly, if the ALJ finds that the claimant is disabled utilizing the standard sequential analysis, and there is medical evidence of the claimant's drug addiction or alcoholism, the ALJ must then determine "whether [the ALJ] would still find [the claimant] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(a), (b)(1). In making this determination, the ALJ must evaluate which of the claimant's limitations would remain if he stopped using drugs or alcohol, and then determine whether any or all of the remaining limitations would be disabling. *See id.* § 404.1535(b)(2).

In proceeding through the five-step sequential analysis, the ALJ made the following pertinent findings: at step three, he determined that DiBenedetto was per se disabled under listings 12.04 (affective disorder) and 12.09 (substance addiction disorder). (Tr. at 30-32); *see* 20 C.F.R. pt. 404, subpt. P, app. 1. Both of those listings required findings that DiBenedetto suffered from two of the four so-called "paragraph B" symptoms. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.00(A), 12.04,

5

12.09. The ALJ made such findings, concluding that DiBenedetto suffered marked difficulties with regard to concentration, persistence, or pace and had experienced three episodes of decompensation. (Tr. at 31.) The ALJ then found that, in the absence of substance use, DiBenedetto would only suffer moderate difficulties in concentration, persistence, and pace, and would likely experience no episodes of decompensation. (*Id.* at 33.) With this improvement, DiBenedetto would no longer qualify as per se disabled under the listings, so the ALJ proceeded to steps four and five. (*Id.* at 34-37.) Based on the testimony of a vocational expert, the ALJ found that DiBenedetto's impairments in the absence of substance use would allow him to work. (*Id.* at 37.) Thus, at issue are the ALJ's findings that DiBenedetto's difficulties with concentration, persistence and pace, and episodes of decompensation would improve in the absence of substance use. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 126 (2d Cir. 2012).

DiBenedetto points to his diagnoses, such as "[m]ajor [d]epressive [d]isorder, [r]ecurrent [e]pisode, [s]evere," with a secondary diagnosis of "[o]ther [a]nd [u]nspecified [a]lcohol [d]ependence," and "[b]ipolar I disorder, current episode depressed," with "[a]lcohol dependence in remission," as evidence that his limitations are caused by his mental

impairments, and his substance use is not a material factor. (Tr. at 523, 559; Dkt. No. 11 at 11.) Further, DiBenedetto argues that his symptoms, such as insomnia, decreased concentration and energy, weight loss, hopelessness, and suicidal ideation, as well as his prescribed medication indicate that his mental impairments and limitations exist independently from his substance use. (Dkt. No. 11 at 11.) However, after reviewing the administrative record, the court concludes that the ALJ's findings that DiBenedetto's difficulties with concentration, persistence and pace, and episodes of decompensation would improve in the absence of substance use is supported by substantial evidence.[3]

As the Commissioner points out, the record contains positive evaluations of DiBenedetto conducted during inpatient admissions when he did not have access to alcohol. (Dkt. No. 12 at 9.) Additionally, all of DiBenedetto's episodes of decompensation occurred when he was under the influence of alcohol. In particular, over his course of treatment from July 30, 2008 through August 5, 2008, for "depression in the context of alcohol use," DiBenedetto's Global Assessment of Functioning (GAF)

---

[3] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

score went from thirty-five[4] to fifty-five.[5]  (Tr. at 538.)  On discharge, DiBenedetto was cooperative, with fair eye contact, and a blunted affect. (*Id.* at 539.)  His insight and judgment had improved.  (*Id.*)  Thereafter, in February 2009, DiBenedetto was admitted to the hospital for a drug overdose after he "had way too much to drink."  (*Id.* at 524.)  Notably, DiBenedetto was intoxicated on admission, and "[h]is mental status . . . improve[d] significantly on the first hospital day."  (*Id.* at 524.)  During his hospital stay, DiBenedetto "recognized that alcohol was one of his major problems."  (*Id.* at 498-99.)  He was discharged on February 17, 2009, when he was no longer acutely depressed and could be managed as an outpatient.  (*Id.* at 499.)  In April 2009, DiBenedetto was twice admitted to St. Joseph's Hospital Health Center.  (*Id.* at 292-93, 297-98, 514-15.)  On April 6, 2009, he presented wanting to enter a rehabilitation facility, stating

---

[4] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004).  A GAF score in the range of thirty-one to forty indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) [or] major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is *unable to work*)."  *Prabhakar v. Life Ins. Co. of N. Am.*, No. 09-CV-05530, 2013 WL 4458728, at *4 n.11 (E.D.N.Y. Aug.16, 2013) (internal quotation marks and citation omitted).

[5] A GAF score in the range of fifty-one and sixty indicates moderate symptoms or moderate difficulty in school, work, and social functioning.  *See Kohler*, 546 F.3d 260, 262 n.1 (2d Cir. 2008).

that "he was tired of living like this." (*Id.* at 297.) He subsequently left the hospital against medical advice, and was readmitted on April 12, 2009, when he was found unresponsive at a neighbor's house after drinking a case of beer. (*Id.* at 292, 294.)

In August 2009, DiBenedetto presented to the Comprehensive Psychiatric Emergency Program (CPEP), after contemplating jumping in front of a train. (*Id.* at 559.) He admitted to having consumed alcohol that evening. (*Id.* at 560.) Shortly thereafter, DiBenedetto was admitted to University Hospital, and, again, his GAF score improved over the course of his stay, going from twenty-five[6] to fifty.[7] (*Id.* at 559.) His medical records reflect that, while hospitalized, Dibenedetto's suicidal ideation abated, he no longer experienced visual hallucinations, he felt less depressed, and his affect became brighter. (*Id.* at 561.) Then, in January 2010, DiBenedetto was brought to CPEP by the police department, for a suicide attempt and

---

[6] "A GAF score of twenty-one to thirty indicates that "[b]ehavior is considerably influenced by delusions or hallucinations [or] serious impairment in communication or judgment . . . [or] inability to function in almost all areas.'" *Whipple v. Astrue*, 2011 WL 1299352, at *2 n.6 (N.D.N.Y. Mar. 8, 2011) (quoting Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000)).

[7] A GAF in the range of forty-one to fifty indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Zabala v. Astrue*, 595 F. 3d. 402, 406 n.2 (2d Cir. 2010) (quoting Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000)).

intoxication. (*Id.* at 484.) He was admitted to the psychiatry unit of St. Joseph's Hospital and reported improvement over his course of hospital stay. (*Id.* at 480.) On discharge, DiBenedetto's GAF was fifty-five, his mood was improved, he was no longer experiencing suicidal ideations, and he was noted to be pleasant and cooperative, with good eye contact, a linear thought process, and improved insight and judgment. (*Id.*)

Finally, in April 2010, DiBenedetto was treated at Community General Hospital after considering suicide. (*Id.* at 344.) At that time, he admitted to heavy alcohol use. (*Id.*) During his hospital stay, he denied suicidal ideation, became "more visible and social," and appeared hopeful and positive. (*Id.* at 341.) His treating physician, Muslim Khan, noted that this was his third inpatient hospitalization over a short period of time, and opined that "[p]rimarily, the alcohol and marijuana w[ere] a major contributing factor." (*Id.* at 341-42.)[8]

## B. RFC Determination

---

[8] DiBenedetto argues that the ALJ erred in relying on Dr. Kahn's opinion in making his determination that substance use was a material factor to the determination of disability, because this opinion "was not a formal assessment or diagnosis as to [DiBenedetto]'s limitations." (Dkt. No. 11 at 11.) However, Dr. Kahn's statement goes to the heart of the ALJ's determination that DiBenedetto would likely experience no episodes of decompensation in the absence of substance use. (Tr. at 33.) Accordingly, the court finds no error in the ALJ's reliance on Dr. Kahn's opinion.

Next, DiBenedetto contends that the ALJ's RFC determination is unsupported by substantial evidence. (Dkt. No. 11 at 12-14.) According to DiBenedetto, the ALJ erred in failing to order a new consultative exam based on his worsening condition. (*Id.*) Again the court disagrees.

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ determined that, if DiBenedetto stopped his substance use, he would have the RFC to perform less than a full range of light work, and be limited to simple, routine, and low-stress tasks with limited contact with the public. (Tr. at 34.)[9] In making his determination, the ALJ relied, in part, on the opinion of consultative examiner Dennis Noia. (*Id.* at 35-36.)

---

[9] Notably, DiBenedetto does not contest the ALJ's assessment of his physical impairments. (*See generally* Dkt. No. 11.)

11

Dr. Noia examined DiBenedetto in July 2009, and opined that he is capable of understanding and following simple instructions and directions, relating and interacting moderately well with others, maintaining attention and concentration, regularly attending to a routine, and learning new tasks. (*Id.* at 299-302.) According to Dr. Noia, DiBenedetto has difficulty making appropriate decisions, and has a history of difficulty dealing with stress. (*Id.* at 302.) Dr. Noia also opined that DiBenedetto appears to be "intellectually capable of managing money, but may need assistance because of ongoing alcohol problems." (*Id.*) The ALJ gave this opinion "significant weight" because it is supported by Dr. Noia's examination results and consistent with the other evidence of record. (*Id.* at 36.)

DiBenedetto argues that the ALJ's duty to develop the record was triggered in this case, because of the "significant time lapse" between the date of Dr. Noia's examination and the ALJ's decision. (Dkt. No. 11 at 13); *see Pierce v. Astrue*, No. 09-CV-813, 2010 WL 6184871, at *5-6 (N.D.N.Y. July 26, 2010) (holding that the ALJ erred in relying on a treating source's opinion, where it was rendered nearly three years prior to the ALJ's decision, and, in the meantime, the evidence indicated that the claimant's condition may have worsened). Specifically, DiBenedetto contends that, in

12

the year and a half between Dr. Noia's examination and the ALJ's decision, he experienced "three psychiatric admissions and spent more than a month undergoing in-patient treatment." (Dkt. No. 11 at 13.) Thus, according to DiBenedetto, the ALJ should have ordered a new consultative examination. (*Id.* at 14.)

The court recognizes that the ALJ has an affirmative obligation to develop the administrative record, however, his duty to do so is not without limit. *See Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010). Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make his determination based upon that evidence. *See* 20 C.F.R. § 404.1520b(a). Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Moreover, the ALJ is afforded discretion in determining whether a consultative exam is warranted. *See* 20 C.F.R. § 404.1519a. As with development of the record generally, "the ALJ is to order a consultative exam only when [the relevant medical evidence of record] is not 'sufficient' to make a decision."

*Firpo v. Chater*, 100 F.3d 943, 1996 WL 49258, at *2 (2d Cir. 1996).

In this case, while an eighteen-month time lapse between a medical source opinion and the ALJ's decision might be a factor in finding a lack of substantial evidence, *see Acevedo v. Astrue*, No. 11 Civ. 8853, 2012 WL 4377323, at *16 (S.D.N.Y. Sept. 4, 2012), this time lapse does not negate the compelling evidence in the record as a whole that, without his substance use, DiBenedetto could perform simple, routine, low-stress tasks with limited public contact, (Tr. at 34). As discussed above, DiBenedetto's hospital records from the period after Dr. Noia's opinion was rendered indicate that, when he did not have access to alcohol, his mental status improved. *See supra* Part VI.A. Specifically, on hospital admission in August 2009, DiBenedetto's mood was "decreased," and he reported experiencing visual hallucinations and suicidal ideation. (Tr. at 561.) However, he was cooperative, with appropriate eye contact, normal speech, linear thought processes, and intact concentration and memory. (*Id.*) His insight and judgment were fair. (*Id.*) Over the course of his hospital stay, DiBenedetto no longer experienced suicidal ideation or visual hallucinations, was less depressed, and his affect became brighter. (*Id.* at 561-62.) These findings are consistent with the results of Dr. Noia's exam.

(*Id.* at 300-01.) Over the course of his January 2010 hospitalization, DiBenedetto's mental status improved and his GAF scores indicate that he was only suffering moderate difficulty in school, work, and social functioning at the time of his discharge. (*Id.* at 480.) Inpatient treatment notes from April 2010 indicate that, at the beginning of his hospital stay, DiBenedetto's attention span and ability to follow directions were fair, but his decision making ability was poor and he was suffering some memory impairment. (*Id.* at 453.) While hospitalized, DiBenedetto's suicidal ideation abated, and his mood, affect, and memory improved. (*Id.* at 341, 406, 410, 414, 418.) Thus, the court is satisfied that further development of the record was unnecessary, as the ALJ had before him substantial evidence that enabled him to render an RFC decision. *See Firpo*, 1996 WL 49258, at *2.

## C. Credibility Determination

DiBenedetto also claims that the ALJ's credibility determination is unsupported by substantial evidence. (Dkt. No. 11 at 14-15.) DiBenedetto again asserts that his "limitations are caused by his mental impairments, and his substance use is not a material factor." (*Id.* at 15.) Further, DiBenedetto argues that the ALJ failed to consider his daily activities, as

15

he was required to do under the regulations. (*Id.*) The Commissioner counters, and the court agrees, that the ALJ considered the relevant factors in making his credibility determination, and his decision is supported by substantial evidence. (Dkt. No. 12 at 13-16.)

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6)

16

other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi)).

Here, the ALJ determined that DiBenedetto was only partially credible. (Tr. at 35.) In making this determination, the ALJ relied on the exam findings of record, DiBenedetto's treatment, including medication, and inconsistencies between DiBenedetto's testimony and medical records. (*Id.* at 34-36.) In particular, DiBenedetto testified that he had last abused alcohol fifteen years ago, however, his treatment records are replete with references to heavy, and daily, alcohol use. (*Id.* at 35, 75-76, 294, 297, 300, 303, 344, 389, 482, 484, 487, 496, 538.) Thus, the ALJ sufficiently set forth reasons, which were well-grounded in the record, for finding DiBenedetto to be only partially credible. *See Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) ("[F]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." (internal quotation marks and citation omitted.)).

**D.     Step Five Determination**

Finally, DiBenedetto argues that the ALJ's step five determination is unsupported by substantial evidence. (Dkt. No. 11 at 16-17.) Specifically, DiBenedetto contends that, due to errors in the ALJ's RFC and credibility determinations, and his conclusion that substance use was material to the finding of disability, the hypothetical posed to the vocational expert (VE) was incomplete. (*Id.* at 16.) Further, DiBenedetto argues that the ALJ failed to consider all of the limitations opined by medical consultant A. Hochberg in crafting the hypothetical he posed to the VE. (*Id.*) Thus, according to DiBenedetto, the VE's testimony cannot provide substantial evidence to support the ALJ's determination. (*Id.* at 16-17.) As discussed above, however, the ALJ's findings were legally sound and are supported by substantial evidence. *See supra* Part VI.A-C. Although the hypothetical question did not include a verbatim recitation of Hochberg's limitations, it appropriately encompassed the restrictions contained in the ALJ's RFC analysis.[10] (Tr. at 34, 77-78, 321-23.) As such, the ALJ's step-five determination was free of legal error and is supported by substantial evidence. *See Mancuso v. Astrue*, 361 F. App'x 176,179 (2d Cir. 2010)

---

[10] The court notes that Hochberg's ultimate conclusion—that DiBenedetto is able to perform simple, sustained work activity in a competitive environment—supports the ALJ's RFC assessment. (Tr. at 34, 323.)

18

(explaining that, if the ALJ's RFC assessment is supported by substantial evidence, it is appropriate for him to rely on that RFC assessment in questioning the VE.)

E.  **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and DiBenedetto's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 21, 2014
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court